21-803-A. We'll hear from Mr. Lee. Good morning, your honors. Josh Lee for the appellant Roger Harbin. The issue in this case boils down to whether hemp qualifies as a controlled substance within the meaning of the federal sentencing guidelines. And the answer to that question is clear. Hemp does not qualify as a controlled substance because it has been legalized. And more to the point, it had been legalized by the time of this defendant's federal sentencing hearing. That alone establishes that the district court plainly erred in counting Mr. Harbin's 2014 offense as a controlled substance offense. It's because the guidelines define a controlled substance offense as an offense under state or federal law that prohibits trafficking in a controlled substance. But Mr. Harbin's conviction was for violating a statute that criminalized trafficking in hemp, which is not a controlled substance. So, you're referring to the present tense of the word prohibit? No, I'm referring to the rule under the Sentencing Reform Act that we apply the law as it exists at the time of the federal sentencing. Does that truly answer the point of plain error? Because there is arguably a reasonable argument that even though you have to apply the guideline version that exists at the time of the sentencing, you still have to look at those words and a violation of statute that prohibits a controlled substance. There is a legitimate grammatical argument that, well, at the time of the conviction, that was prohibited under the Controlled Substances Act, both state and federal. I don't think there is. It's as if there were a change to the guidelines themselves. So, let me give you an example. If the guidelines themselves said, for the purpose of applying this guideline, marijuana shall not count as a controlled substance. In that situation, it's obvious that his conviction would not count. But, as the First Circuit said in Abdul Aziz, this situation is not different than that because the guidelines themselves incorporate the state and federal controlled substance schedules. So, a change to those schedules effectively is a change to the guideline. So, if you're applying, the other thing I would say is that the Sentencing Reform Act, as the Supreme Court said in Dorsey, instantiates a general principle that we apply the law as it exists at the time of sentencing. So, that's why I think that it is plain. Wait a minute. How do the guidelines incorporate existing law in the state of Wyoming? How do they what? How do they incorporate state law? Based on this Court's decision in Jones, this Court's decision in Jones holds that a controlled substance is not limited to a federally controlled substance. I didn't say that. It's a substance that's controlled under state order. What I want to know is, you say it incorporates the Wyoming law as of the date of sentencing. I don't see how that's so. It's so based on the Sentencing Reform Act. So, controlled substance has to incorporate some law because that's what it means for something to be controlled. And the Sentencing Reform Act, as the First, Fourth, Sixth, and Ninth states that we incorporate the law as it exists at the time of sentencing. So, the government's argument... Go ahead, Michael. So, let's back up. Here's where these things all start to spin for me because it seems like in the backdrop of these enhancements for prior felonies, like in this one, the intent's not... But it's not there because Congress was really upset with people about him. It was because they were upset with people about trafficking things that were illegal, and at the time he committed the crime, it was illegal. And so, the fact that it's no longer illegal doesn't mean that it wasn't when he committed it, and that it's not still swept in to the analysis. Except that the guideline says that it has to prohibit trafficking in a controlled substance, and then we have to define what a controlled substance means. And then, as I said, the Sentencing Reform Act pulls in the current law, and as the First Circuit said in Abdul Aziz, that makes sense because what we care about is how problematic we consider the past conduct now. And now, we understand that trafficking in hemp is not problematic. And so, we don't want to punish somebody who is distributing hemp as if they were a criminal. Federal government in all 50 states have determined that distributing hemp is not  In Aziz, though, that reference is in reference to federal convictions, correct? It is, but the same... But not to state convictions. Well, so in Abdul Aziz, the First Circuit has said controlled substance means federally controlled substance. Here, we mean federally or state controlled substance, but that's a distinction without a difference here because hemp is illegal under both federal and state law. So, it would be one thing if, you know, the federal government legalized psilocybin, for example. That would make no difference because psilocybin is still illegal in Wyoming, but when it's been legalized under both state or federal law, it's no longer a controlled substance. So, I think that the government's argument that the definition of a controlled substance offense is locked in at the time of the prior just does not make sense. So for example, that would prevent the Sentencing Commission from broadening the definition of controlled substance offense to fill in loopholes. So let me give you an example. This court said in the McKibbin case, which is cited in our briefs, that no Colorado drug trafficking offenses count as a controlled substance offense because Colorado's crime includes an offer to sell. And offer to sell is not one of the actions listed in the definition of a controlled substance offense. By the government's lights, if the commission said, we want to fill that out, they couldn't do that because it didn't count as a controlled substance offense at the time of the prior. And that is why we apply the law as- But that's the flip side, right? To what you're arguing. What do you mean? Well, you're saying they couldn't do it because at the time of the prior, it was legal, or it couldn't be enhanced. So, it can't be enhanced because at the time of sentencing, it's legal. Under my theory, the commission can capture offers to sell with an amendment because it would be within the meaning of controlled substance offense at the time of sentencing. Okay, I misunderstood your- Right. Yeah, so I think the commission could fix McKibbin and sweep in offers to sell, but under the government's theory, they couldn't. Now, the other thing that the government says is that this case is controlled by the McNeil decision from the Supreme Court, but what the government offers is a plain misreading of the McNeil decision. In McNeil, the question was about how do we define what the defendant was convicted of in the past? What are the penalties and elements that comprise that prior offense? That's a historical question, and we answer the historical question by looking at the law as it existed at the time of the offense. Why? Because it's an element of the crime for which he was convicted? So, it's a historical question of what happened in the past. So, for example, in Mr. Harbin's case, he could have been convicted for distributing hemp, and we know that because that was the Wyoming law back then. The fact that Wyoming has now legalized hemp doesn't mean we go back and say he couldn't have been convicted for hemp. So, that's what McNeil says, is when we're asking what happened in the past, what was he convicted of, we look to the law at the time of the offense. But when we're defining the scope of the federal habitual offender enhancement as a matter of federal sentencing law, we apply the law in existence at the time of sentencing. So, that's the distinction. And the question we're posing here is, what does the phrase controlled substance mean in the career offender guideline? And to answer that question, you look to current law. So, how do you deal with the 28-J letter that he submitted yesterday? Because as I understand it, the Eighth Circuit, albeit in a per curiam unpublished opinion, unanimously had three judges that said exactly the opposite of you on this issue. And so, even if we, on prong two of plain error, even if we completely agree with your analysis, how can we say that if I would, that it deviates from the great weight of authority when, you know, really all we have are, we do have three published opinions. We have Williams, an unpublished opinion, and we have this unpublished opinion. So, I'm not sure that we can say, even if we agree with you, that it was just an obvious error. So, honestly, I don't think that the Eighth Circuit's Jackson decision should count. And the reason is, this was not fully briefed to the Eighth Circuit. It came up only in a 28-J letter. The Eighth Circuit had one sentence of analysis on this. And when the government asked the Eighth Circuit to publish the decision, the Eighth Circuit said no. So, the Eighth Circuit has basically said, we don't think this should be relied on in future cases. And if that's what the Eighth Circuit thinks, I don't think this court should rely on it either. I think that stands in sharp contrast to the four decisions that Mr. Harbin relies on, which are all very thoroughly reasoned. The Eighth Circuit didn't consider any of the arguments that Mr. Harbin has presented, and didn't discuss any of the cases that went the other way. If there are no further questions, I'd reserve the remainder of my time for rebuttal. Thank you. Good morning. May it please the court, counsel. My name is TJ Forward. I'm an assistant US attorney with the District of Wyoming, and I'm arguing this matter. I'm half the United States. In the end, much of this, I do believe, comes down to the Jones decision from this court very recently. Upon looking at many of the cases cited and relied upon by the appellant, is looking at what is the definition of a controlled substance. And I believe in all of those, if not, at least most of those, if not all of those, the definition of a controlled substance within those circuits, or discussed, or cases that they relied upon, such as Bautista, very much emphasized the fact that the controlled substance needs to be prohibited federally. It needs to be prohibited by the- Because there's no question here that it was, at the time of the conviction, it was prohibited federally and by state law. And at the time of sentencing, it wasn't prohibited under either one. So it's still a binary change. And obviously, in Bautista, there's a lot of cases that held the opposite that we did in Jones. So I'm not really sure why that is a logical distinction. If I may, Your Honor, I think one of the large reasons for that is where's my notes here? One of the key quotations from Jones, if I can find it. And of course, I can't because that's how things go. It's okay. Actually, here we go, on this one. It's right at the end. It states, ignoring prior state felony convictions and sentencing determinations, whether or not they involved a non-controlled, non-CSA listed substances, flouts Congress's intent that the guidelines prescribe an enhanced sentence for the defendants with a history of two or more prior federal, state, or local felony convictions for offenses committed on different occasions. This relies upon the Henderson case, which the Jackson case, I supplied with the court yesterday, also relies heavily upon. And the reason I state that is looking at the Jackson case is that the important thing is not looking at what is a controlled substance today or what the Controlled Substances Act says today. What matters is what happened at the time of the conviction. And in those cases, such as Bautista, they still relied upon the fact of where that substance needed to be federally prohibited, where that is not what is said in Jones. But importantly, upon Henderson, relying on that in Jones, is that we look at what happened in the past. And Jackson emphasizes that. Yes, it is unpublished, and yes, there is not a lot of analysis into it, but it still shows that key portion of where it states that in Iowa, just like in Wyoming, they have since legalized hemp, just as hemp was legalized in Wyoming and hemp has been legalized federally. But that did not matter, because as Jackson stated, what matters is what happened at the time of the conviction. And at that time of conviction, it was prohibited. And that is what McNeil spouses. That is what the concurrence in Williams also states. And I do believe the United States has two very strong arguments in this case. I believe the strongest one, though, is the second prong about the plain air. And I think that is established clearly in Williams, in which the court there did not reverse. Well, they had a good reason. There was only one circuit, Bautista, that addressed the issue. And so in Williams, the court, just like we, generally look to our own precedent to apply a prong to a plain air, but there, too, like we, look at the great weight of authority. And if we, or the Sixth Circuit would have been hard-pressed to say, the great weight of authority has been shown by the fact that we have one circuit opinion, and one circuit opinion only, Bautista, that has addressed that issue. First of all, it's unpublished, but I think it was correctly decided, frankly. It was only one circuit. How could they have said it was plain air? Agreed, Your Honor. And at the time of our sentencing, I've not taken a look to see at what time the sentencing was in that case and when those other cases were decided. Well, but then therein lies the problem. Right now, we look at what is a prong to a plain air. We evaluate obviousness at the time that we make the decision. That's the Supreme Court's opinion in Henderson. So as we speak right now, there are three published opinions, including more. We have the unpublished opinion in Williams that held that we look at the time of sentencing, and we have your 28J letter that has about half a sentence without any explanation or any authority going the other way on this issue. So under Henderson, looking at it today in terms of what is obvious, it seems like a completely different situation than the Sixth Circuit had in Williams. And I understand that completely, and I would say it's different. I wouldn't say it's completely different because there's still a lot of critique that goes into those opinions, which again, with Williams and the concurrence can be seen there. And I think that relies upon the United States' reliance upon McNeil. And that's seen upon the reliance that we see also in the Volts case that we also cited in the 28J letter, which is the first time I've ever done that, so I hope I did that correctly yesterday. But even in Volts, again, it's a district court opinion there. However, it states that, very similar to the Johnson District Court case out of I believe it was New Mexico, that the Bautista case just seems to very much disregard McNeil. It states that it's following it, but a lot of the reasoning doesn't seem to match up, which very much agrees with the concurrence in that Williams decision as well, where I believe the way he stated exactly was, it espouses fidelity to McNeil, but then does something completely opposite. And that is, and as we look in all these type of enhancements, whether it's under the 841, under 2K2.1, under career offender, all those historically, they have looked at the offense at the time of conviction, not at the time of sentencing. Those elements are locked in. What happens afterwards is a different story. And as discussed briefly by appellate counsel, and we discussed before, is that the sentencing commission has the ability to draft rules. Congress, when they enact rules, can draft these as well. And I think that's a key thing as well from the Dorsey decision that was cited earlier, is that Dorsey states that Congress can override the saving statute by making the repeal or amendment of a criminal law retroactive either expressly or by implication. And I'm looking here, and I'm sorry it's not within any of my briefing. It's United States v. Leo, 2022 Westlaw 180155. And there they state that nothing in the farm bill shows that it is to be retroactive. There's nothing in the statute, there's nothing in the commissions that say, if this is changed, previous convictions for marijuana should not count because of this. The farm bill was enacted almost four years ago. There's been plenty of opportunity to revise this to give some sort of guidance on whether this should count, and it is not. Looking at McNeil, I think it is clear that those elements are locked into the time. And what the goal of career offender is, what we see in many of the decisions, whether it's armed career criminal or career offender, is to focus at punishing repeat offenders. And it's for what their conduct is in the past. Was what they did in the past criminal? Yes. Did Mr. Harbin, in this case, violate delivery of marijuana in, I believe it was 2014? And the answer is yes. Because of that, those convictions count. And that's essentially where our argument lies upon. Is we do believe that McNeil does control. We do believe that the sites, whether they're district courts or unsighted decisions, are guiding on this. And I do believe the recent one that was cited by the United States yesterday, the United States versus Volts, also states the same exact proposition. That McNeil is controlling. That in these situations, it applies. There's no further questions? Well, I think there are questions. Oh, please, yes, please do. But one thing, before I forget, if you, within the next five business days, if you would submit a 28-J letter on this, I think you said it's Liu case, if you could just, with that argument, just give us the site. I apologize, Your Honor. I will do that. No apology. But I wanted to ask you, on what Mr. Harbin was convicted of, does the categorical approach have anything to say about any of the elements for which he was convicted, in this case, for which he was sentenced? There was one of the cases that was cited, that was cited by the United States, and I forget which one, but I remember that it made a reference to, I believe it was either Judge Holmes or Judge Hartz from this circuit. And it discussed, kind of in this situation, whether it was the modified categorical approach or the categorical approach. I do believe... Originally, yeah, I don't need to talk over you. Maybe I probably didn't answer my question very well. This was a 922-G1 unlawful possession of a firearm, right? This one, I believe, it was a possession of a firearm, it was also a possession with intent to distribute. I forget if he pled to that one or not, but... Whether marijuana had been a controlled substance, does the categorical approach have anything to say about what he was convicted of in this particular case? I believe if we look at the categorical approach, it would say, we look at the elements, and the elements at the time would be, did he deliver marijuana at that time? And at that time, the categorical approach probably would apply in this situation, and the categorical approach would say that hemp would be included as one of those substances at that time. Even though, logically, we know it was not him. Well, I thought he was convicted of possession with intent to distribute methamphetamine and carrying a firearm in relation to a drug trafficking crime involving methamphetamine. For the current offense, Your Honor, yes, he was. Right, so on the charges for which he was convicted, the categorical approach doesn't have anything to do with it. Oh, absolutely not, Your Honor, I apologize, no. And so, in McNeil, the Supreme Court was talking about an element for which Mr. McNeil was convicted, right? Because I think if that was a 922 G1 offense, and the existence of a felony would obviously have been an element, right? Am I right about that? I think you're correct, Your Honor. Well, that's a pretty big difference, isn't it? It's a difference, and I'm not sure if it's a big difference, because I think that the analysis and how they come to that conclusion, looking at those prior offenses, is different, because they were looking there at what those prior offenses still were. Yes, it does matter for what that current offense was, because was he a felon, yes. But I think the important distinction, and as many of those cases the United States relies upon, and how it's been applied since then, show that we still need to look at what those offenses, or what the elements were, what the offense was at that time of conviction. Yeah, well, the elements of possession with intent to distribute methamphetamine, I mean, we look at that, the elements at the time that he was convicted, right? Yes. And carrying a firearm. But why would we be looking at the facts at the time of a prior conviction that had nothing to do with why he is being convicted now, that they pertain only to an enhancement of the sentence under the guidelines? Your Honor, I think it's because it is that enhancement, it's not the current offense itself. And I think that is the distinction there. Okay. Thank you. Thank you very much. The government said a couple of times that the elements of a prior offense are locked in at the time of the prior offense. We absolutely agree with that. The elements of Mr. Harbin's prior marijuana offense were locked in at the time he committed it. And again, that is why, under the categorical approach, you have to assume that the conviction was for him. What is not locked in is the scope of the federal sentencing enhancement. And that's what we're saying changed when him was legalized. The elements of the prior offense did not change. The fact that those elements do not meet the federal standard changed. I think, Judge Bachrach, you mentioned the categorical approach. I think what we should be applying here is the categorical approach. What the government is asking for is a circular approach. The categorical approach requires, compare what the guy did in the past to a federal standard as set forth in the guidelines. That's what I'm asking the court to do. What the government is saying, no, you take the prior offense and you compare that offense to itself, which I don't think works. There's the case that we cited that says you can establish plain error based on the weight of out-of-circuit authority. And here, we do have four thoroughly reasoned cases on our side. And the government has one which is really not reasoned. And I think that that constitutes the weight of authority. You know, Justice, now Justice Gorsuch said in one of his cases that to err is human and to plainly err is too. So the fact that one court got it wrong does not mean the error isn't plain. And I think we can see how another circuit can plainly err when it decides a case based on inadequate briefing and a 28-J letter that doesn't cite any authority. So for these reasons, I think that the Eighth Circuit decision doesn't prevent a finding of plain error, and the court should reverse and remand for resentencing. How do you distinguish Duran and the reclassification cases? Because those cases are about what happened in the past. They're about the historical elements of the prior. So for example, Duran was about whether the guy was convicted of a felony or convicted of a misdemeanor. Well, he was convicted of a felony. That's locked in at the time. It doesn't matter that somebody else in the future could be convicted of a misdemeanor for the same time. Was that an element of the offense in Duran? I don't think that it was, no. What if in Duran there was an amendment to the statute, and it made it a misdemeanor, not a felony? To the state statute? That would make no difference, and the reason is because there's not a change to the federal standard of what constitutes a felony. And that's because the federal law did not incorporate the state law as it does here. So effectively, a change to the state law is a change to the federal law, because the federal law incorporates state law. So back on Duran. So if it wasn't an element of the offense, and it was backward-looking, I understand you're saying, well, that was backward-looking, so that's not our case. But he's saying we should be looking backward in this case. So if it was backward-looking in Duran, and it wasn't an element of the offense, why should we take a backward-looking approach here, too, where it's not, again, an element of the offense? You're taking a backward-looking approach with respect to one side of the categorical approach, with respect to the elements and penalties attached to the prior, but not with respect to the scope of the federal enhancement. The federal definition of controlled substance, which is confusing, because it incorporates state law. OK. Thank you very much. We'll argue both of your briefs in today. And this matter is submitted for.